23CA1416 Peo v Aurelio 05-07-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1416
City and County of Denver District Court No. 13CR4662
Honorable Jay S. Grant, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Nicholas J. Aurelio,

Defendant-Appellant.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE SULLIVAN
Fox and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 7, 2026

---

Philip J. Weiser, Attorney General, Patrick A. Withers, Assistant Solicitor
General and Senior Assistant Attorney General, Denver, Colorado, for
Plaintiff-Appellee

Nicholas J. Aurelio, Pro Se

¶ 1    Defendant, Nicholas J. Aurelio, appeals the postconviction court's order denying his Crim. P. 35(c) motion for postconviction relief.  We affirm.

## I.    Background

¶ 2    Aurelio and the victim were involved in a romantic relationship in 2012.  The victim ended the relationship in late 2012, and by summer 2013, she had sought and obtained a civil protection order and two criminal protection orders prohibiting further contact.  Aurelio then violated the criminal protection order in Denver District Court Case No. 13CR3458 by continuing to communicate with the victim.  The day before a bond revocation hearing in Case No. 13CR3458, Aurelio confronted the victim with a gun outside her apartment, forced himself inside, and sexually assaulted her.

¶ 3    Two different public defenders represented Aurelio at the beginning of the case.  Before trial, however, Aurelio fired the public defenders and retained private defense counsel (trial counsel).

¶ 4    At trial, the prosecution presented testimony from the victim, as well as another of Aurelio's ex-girlfriends, J.R., who had previously obtained a restraining order against him.  Aurelio's

1

defense was that the victim had fabricated her allegations because she wanted to extort him for money.

¶ 5    A jury found Aurelio guilty of sexual assault, second degree kidnapping, second degree burglary, intimidation of a witness or victim, tampering with physical evidence, two counts of stalking, two counts of violation of a protection order, and a violation of bail bond conditions.  The trial court sentenced Aurelio to seventy-seven and a half years in the custody of the Department of Corrections (DOC).

¶ 6    Aurelio appealed his convictions, arguing, among other things, that the trial court erroneously (1) admitted evidence prohibited by CRE 404(b) and (2) denied him a hearing on his postconviction motion for a new trial based on newly discovered evidence.  A division of this court rejected his contentions and affirmed his convictions.  *People v. Aurelio*, (Colo. App. No. 16CA0264, Feb. 8, 2018) (not published pursuant to C.A.R. 35(e)) (*Aurelio I*).

¶ 7    Aurelio, proceeding pro se, then filed a 143-page motion for postconviction relief under Crim. P. 35(c).  The postconviction court appointed counsel who supplemented Aurelio's motion.  The postconviction court issued a detailed written order denying the

bulk of Aurelio's claims but granting an evidentiary hearing on one: whether trial counsel provided ineffective assistance of counsel during plea negotiations. Before the hearing, the court allowed Aurelio's postconviction counsel to withdraw but denied Aurelio's request to appoint substitute counsel. Aurelio appeared at the hearing with only advisory counsel. After the hearing, the court rejected his claim, concluding trial counsel provided Aurelio with effective representation during plea negotiations.

¶ 8     Aurelio, again proceeding pro se, now appeals. He contends that the postconviction court erred by (1) denying all but one of his ineffective assistance of counsel claims without a hearing; (2) rejecting his prosecutorial misconduct claims as successive; (3) not appointing substitute counsel after granting his postconviction counsel's request to withdraw; and (4) denying his postconviction claim, after the evidentiary hearing, that trial counsel provided ineffective assistance during plea negotiations.[1] We address each contention in turn.

---

[1] Aurelio's other claims in his original and supplemental postconviction petitions that he doesn't raise on appeal are deemed abandoned. *See People v. Smith*, 2017 COA 12, ¶ 27.

## II. General Legal Principles Under Crim. P. 35(c)

¶ 9        Postconviction proceedings are "intended to prevent injustices after conviction and sentencing, not to provide perpetual review." *People v. Melendez*, 2024 COA 21M, ¶ 38 (quoting *People v. Rodriguez*, 914 P.2d 230, 249 (Colo. 1996)).  As a result, a postconviction court must deny any claim that the defendant presented and the court resolved in a previous appeal or postconviction proceeding.  Crim. P. 35(c)(3)(VI).  Similarly, a postconviction court must deny any claim that the defendant *could have* presented in a previous appeal or postconviction proceeding.  Crim. P. 35(c)(3)(VII).  "Even if the claims are slightly different, 'an argument raised under Rule 35 which does not precisely duplicate an issue raised on appeal will be precluded if its review would be nothing more than a second appeal addressing the same issues on some recently contrived constitutional theory.'"  *Dunlap v. People*, 173 P.3d 1054, 1093 (Colo. 2007) (quoting *Rodriguez*, 914 P.2d at 249).

¶ 10        These bars on successive claims don't apply, however, to postconviction claims "based on evidence that could not have been

discovered previously through the exercise of due diligence."
Crim. P. 35(c)(3)(VI)(a), (VII)(b).

### III.    Ineffective Assistance of Counsel

¶ 11    Aurelio contends that the postconviction court erred by denying all but one of his ineffective assistance of counsel claims without a hearing.  We disagree.

### A.    Standard of Review and Applicable Law

¶ 12    We review de novo a postconviction court's denial of a Crim. P. 35(c) motion without a hearing.  *People v. Joslin*, 2018 COA 24, ¶ 5.  A postconviction court may deny a Crim. P. 35(c) motion without a hearing if the allegations are bare and conclusory; the allegations, even if true, don't warrant relief; or the record refutes the claims.  *Id.* at ¶ 4.

¶ 13    To prevail on an ineffective assistance of counsel claim, a defendant must prove that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense.  *People v. Chalchi-Sevilla*, 2019 COA 75, ¶ 6 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  A defendant bears the burden of proving both prongs by a preponderance of the evidence.  *People v. Houser*, 2020 COA 128, ¶ 31.  We apply a strong presumption that

counsel's strategy fell within the wide range of competent assistance. *Strickland*, 466 U.S. at 689; *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003).

¶ 14　　An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To establish prejudice, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the proceeding's outcome would have been different. *Strickland*, 466 U.S. at 694. If, for example, the defendant asserts that counsel's failure to investigate prejudiced the defense the defendant must show a reasonable probability that the investigation would have uncovered evidence that would have affected the proceeding's outcome. *See People v. Pendleton*, 2015 COA 154, ¶ 34 ("[U]nless additional investigation would have revealed 'substantial evidence which, if introduced, might reasonably have led to a different result,' the failure to conduct such investigation is not prejudicial." (quoting *People v. Chambers*, 900 P.2d 1249, 1252 (Colo. App. 1994))).

¶ 15　　We broadly construe pleadings filed by unrepresented litigants "to ensure that they are not denied review of important issues

because of their inability to articulate their argument like a lawyer." *Jones v. Williams*, 2019 CO 61, ¶ 5. But we will not rewrite an unrepresented litigant's pleadings or act as their advocate. *People v. Cali*, 2020 CO 20, ¶ 34.

## B. Contentions Refuted by the Record

¶ 16 We first address Aurelio's contentions that (1) trial counsel failed to investigate data retrieved from the victim's cell phone; (2) one of his public defenders mishandled the admissibility of certain CRE 404(b) evidence about his prior case, Case No. 13CR3458; (3) trial counsel failed to limit the scope of or object to J.R.'s testimony that violated CRE 404(b); (4) trial counsel failed to investigate J.R. to discover impeachment information; (5) trial counsel inadequately cross-examined the victim; and (6) trial counsel failed to call Aurelio' s mother as a witness. Because the record contradicts Aurelio's contentions, we perceive no error in the postconviction court's denial of these claims without a hearing.

### 1. Cell Phone Data

¶ 17 Aurelio contends that trial counsel provided ineffective assistance by failing to discover that the victim's cell phone data

contained hundreds of his emails and that it was incomplete, suggesting the victim had deleted exculpatory information.

¶ 18     We conclude the record refutes his claim. Trial counsel deftly navigated the voluminous phone data exhibit, referencing timestamps and specific line and page numbers throughout his cross-examination of the prosecution's forensic expert. The expert even complimented trial counsel's command of the data, saying, "You get an 'A' because you're the first defense attorney that's ever been able to figure this out very easy." Moreover, trial counsel *did* elicit testimony from the expert that the data was incomplete and that it contained hundreds of Aurelio's emails.

¶ 19     Because the record refutes Aurelio's allegations underlying this claim, we agree with the postconviction court that no hearing was required. *See Joslin*, ¶ 4.

### 2.     CRE 404(b) and the Victim's Testimony

¶ 20     Aurelio contends that one of his public defenders provided ineffective assistance before trial by failing to make "any type of plausible argument" under CRE 404(b) for excluding the victim's testimony about Case No. 13CR3458.

¶ 21     The record also refutes this contention.  In response to the prosecution's pretrial motion to join the cases or admit evidence of the other case, the public defender argued that the evidence should be excluded because the two cases lacked overlap among the charges and the crimes didn't reflect a common scheme or plan. *See* CRE 404(b)(2).  She also argued the evidence should be excluded under the third and fourth prongs of *People v. Spoto*, 795 P.2d 1314 (Colo. 1990).  At the motions hearing, the public defender reraised her objection to introducing the evidence.  On appeal, Aurelio doesn't identify with specificity any additional legal arguments the public defender should have made but didn't, much less show a reasonable probability that such arguments would have led to a different outcome.[2]  *See Strickland*, 466 U.S. at 694.

¶ 22     In addition to being refuted by the record, we also conclude that this claim is successive under Crim. P. 35(c)(3)(VI).  In his

---

[2] Although Aurelio references where he made these arguments more fully below, incorporating those arguments by reference is no substitute for adequately developing the argument on appeal.  *See* C.A.R. 57 ("Incorporation by reference of briefs previously filed in the lower court is prohibited."); *see also People v. Phipps*, 2016 COA 190M, ¶ 12 ("[W]e do not address any of the 'incorporated by reference' arguments.").

direct appeal, Aurelio advanced, and the division rejected, arguments similar to those that he now makes under *Spoto* and CRE 404(b). *See Aurelio I,* slip op. at ¶¶ 43-50. Although Aurelio now attempts to recast his direct appeal arguments as ineffective assistance of counsel claims, these claims aren't sufficiently distinct to overcome C.A.R. 35(c)(3)(VI)'s successiveness bar. *See People v. Villarreal,* 231 P.3d 29, 33 (Colo. App. 2009) (even if a claim isn't identical to an issue previously adjudicated, the claim is successive if it "allege[s] precisely the same . . . errors that were raised and resolved [in the direct appeal] and has merely recast them under the constitutional theory of ineffective assistance of counsel"), *aff'd,* 2012 CO 64, *and abrogated on other grounds by, Hagos v. People,* 2012 CO 63; *see also Dunlap,* 173 P.3d at 1093 (postconviction claims that are "essentially identical" to those raised and resolved on direct appeal may be denied as successive).

¶ 23    Accordingly, the postconviction court didn't err by determining that no hearing was required on this claim. *See Joslin,* ¶ 4.

### 3. CRE 404(b) and J.R.'s Testimony

¶ 24     Aurelio also argues that trial counsel provided ineffective assistance by failing to seek an in limine order limiting the scope of J.R.'s testimony or otherwise objecting to her testimony.

¶ 25     The record refutes this claim, too. The record reflects that trial counsel reached an informal agreement with the prosecution about the scope and nature of J.R.'s testimony. Specifically, counsel agreed that J.R. could testify about her history with Aurelio and that she had sought a protection order against him, but she couldn't mention the nature of the past charges or that he had pleaded guilty. Although Aurelio insists trial counsel should have formalized this pretrial agreement because J.R. "testified too much" and therefore violated CRE 404(b), he doesn't point us to, nor does our independent review reveal, any testimony outside the agreement's scope.

¶ 26     Moreover, this claim is successive because it attempts to recast an argument that Aurelio made on direct appeal — and that the division rejected — as an ineffective assistance of counsel claim. *See Aurelio I,* slip op. at ¶¶ 16-42; *accord Villarreal,* 231 P.3d at 33.

¶ 27    Thus, the postconviction court didn't err by determining that no hearing was required on this claim.  *See Joslin*, ¶ 4.

### 4.    Investigation and Impeachment of J.R.

¶ 28    Aurelio argues that trial counsel provided ineffective assistance by failing to investigate J.R. to obtain impeachment evidence.

¶ 29    We conclude the record refutes this contention.  Trial counsel *did* impeach J.R.'s credibility on cross-examination, eliciting testimony that she (1) continued her relationship with Aurelio for over three years despite allegations of violence; (2) took money from Aurelio; (3) dropped restraining orders she had against Aurelio; and (4) chose to spend time with Aurelio while a restraining order was in place.  While Aurelio argues that trial counsel should have further impeached J.R. based on her past convictions, false testimony, and purported mental illness and drug abuse, counsel could have reasonably decided that further impeachment would have been cumulative, *see People v. Washington*, 2014 COA 41, ¶ 35, or risked alienating the jury, *see Pickens v. Gibson*, 206 F.3d 988, 1002 (10th Cir. 2000) (counsel's decision to avoid "vigorously" challenging a "compelling and sympathetic victim" was "strategically reasonable").

12

*See also Strickland*, 466 U.S. at 689 (explaining that the defendant must overcome the presumption that "the challenged action 'might be considered sound trial strategy'" (citation omitted)).

¶ 30    In addition, even if we assumed that trial counsel's performance was deficient, Aurelio doesn't explain how further investigation and impeachment of J.R. would have changed the jury's verdict. *See Pendleton*, ¶ 34.

¶ 31    Finally, to the extent Aurelio argues that trial counsel provided ineffective assistance by allowing J.R. to give "extensive" false testimony at trial, he again improperly recasts an argument he made on direct appeal as an ineffective assistance of counsel claim. *See Aurelio I*, slip op. at ¶ 65 (holding that the record supported the trial court's findings that no new evidence suggested that J.R. perjured herself at trial); *accord Villarreal*, 231 P.3d at 33.

### 5.    Impeachment of the Victim

¶ 32    Aurelio similarly contends that trial counsel provided ineffective assistance by failing to adequately impeach the victim. He argues that trial counsel should have impeached the victim for lying about Aurelio owing her money, her clothing the day of the sexual assault, and a lawsuit she filed against his mother.

According to Aurelio, trial counsel could have "easily contradicted" the victim's lies had he not rushed the cross-examination and failed to subpoena bank records.

¶ 33    Again, the record contradicts Aurelio's allegations. Trial counsel thoroughly cross-examined the victim about her financial dealings with Aurelio, the debt Aurelio owed her, and the lawsuit she filed against Aurelio's mother. Trial counsel also impeached the victim based on her dislike for Aurelio, inconsistencies in her testimony about cutting off communication with Aurelio, and her offers to drop the charges if Aurelio paid her money.

¶ 34    Moreover, Aurelio again doesn't explain how further impeachment of the victim would have affected the jury's verdict. *See Joslin,* ¶ 4. And as with trial counsel's cross-examination of J.R., trial counsel could have reasonably decided that further impeachment of the victim would have been cumulative or harmful to Aurelio's defense. *See Washington,* ¶ 35; *Pickens,* 206 F.3d at 1002; *see also People v. Bradley,* 25 P.3d 1271, 1275 (Colo. App. 2001) ("Mere disagreement as to trial strategy will not support a claim for ineffective assistance of counsel.").

14

### 6. Aurelio's Mother

¶ 35 Aurelio also contends that trial counsel provided ineffective assistance by failing to call his mother as a witness. According to Aurelio, his mother would have testified that the victim contacted her several times offering to drop the charges in exchange for money.

¶ 36 We conclude that the record refutes Aurelio's contention that trial counsel's failure to call his mother constituted deficient performance. *See Strickland*, 466 U.S. at 687. Trial counsel elicited similar evidence by cross-examining the victim about a text message in which she told Aurelio that she would drop the charges (except the restraining order) if Aurelio paid her $7,480. Trial counsel also elicited testimony from the victim that she wrote letters to the city attorney's office asking for charges to be dismissed after Aurelio and his mother paid her. Finally, trial counsel asked the victim about an email found on her phone in which the sender told Aurelio's mother, "If Nick can give me at least $1,000 in cash before the 15th, I will plead the Fifth."

¶ 37 Based on this record, we can't conclude that trial counsel's decision to refrain from eliciting similar testimony from his mother

constituted deficient performance.  *See Washington*, ¶ 35.  And in any event, Aurelio doesn't explain how additional, similar testimony from his mother would have changed the jury's verdict.  *See Pendleton*, ¶ 34.

### C.    Conclusory and Insufficient Allegations

¶ 38    We next address Aurelio's contentions that the postconviction court should have granted him a hearing on his claims that (1) his lawyers failed to investigate and secure certain evidence that would have impeached the victim; (2) trial counsel's issues in his personal and professional life resulted in ineffective assistance of counsel; (3) trial counsel failed to exclude the prosecution's generalized expert testimony; and (4) trial counsel failed to raise certain arguments in his motion for a new trial.  Because Aurelio's petition as supplemented didn't establish both of *Strickland*'s elements on these claims or the claims are conclusory, we agree with the postconviction court that no hearing was required.

### 1.    General Failure to Investigate

¶ 39    Aurelio contends that his two pretrial public defenders and trial counsel each provided ineffective assistance of counsel by

16

failing to investigate or secure various pieces of evidence that he says would have undermined the victim's credibility.

¶ 40 In his opening brief, Aurelio lists examples of such evidence but doesn't explain how the evidence, if obtained, would have impeached the victim's credibility or otherwise changed the trial's outcome.[3] Accordingly, we perceive no error in the postconviction court's rejection of this claim without a hearing. *See People v. Delgado*, 2019 COA 55, ¶¶ 36-37 (explaining that the defendant's "vague assertions" and "conclusory statements" that defense counsel failed to properly investigate the victim's history of abuse by others didn't establish prejudice).

### 2. Conflicts of Interest

¶ 41 Aurelio contends that trial counsel labored under conflicts of interest during his representation because of a medical condition, staffing issues, and financial problems. But he cites no case law, here or below, indicating that these issues, even if true, amounted

---

[3] Again, we don't consider arguments from Aurelio's lower court pleadings that he attempts to incorporate by reference. *See* C.A.R. 57; *Phipps*, ¶ 12. Even below, Aurelio never explained how further impeachment of the victim would have changed the jury's verdict. *See People v. Pendleton*, 2015 COA 154, ¶ 34.

to conflicts of interest that required trial counsel to withdraw. *See West v. People*, 2015 CO 5, ¶ 3 (to establish a conflict of interest justifying relief, a defendant must show both an actual conflict and an adverse effect resulting from that conflict).

¶ 42 To the extent Aurelio argues on appeal that these allegations also support an ineffective assistance of counsel claim, he doesn't establish how these issues led to trial errors that prejudiced him. *See People v. White*, 514 P.2d 69, 71 (Colo. 1973). Instead, Aurelio simply reraises trial counsel's alleged inadequate investigation and failure to obtain an in limine order cabining J.R.'s testimony — claims we have already rejected. *See supra* Parts III.B.3, III.C.1.

### 3. Generalized Expert Testimony

¶ 43 Aurelio also contends that trial counsel provided ineffective assistance in abandoning his request for a *Shreck* hearing on the admissibility of testimony by the prosecution's generalized expert, *see People v. Shreck*, 22 P.3d 68, 77-79 (Colo. 2001), and instead relying on an informal agreement with the prosecution regarding the scope of the expert's testimony.

¶ 44 We perceive no basis to reverse. Beyond generally alleging that the expert "testified far beyond the scope of her expertise,"

Aurelio doesn't specify which testimony was out of bounds, how it prejudiced his defense, or how a hearing on the expert's credentials would have convinced the trial court to exclude the testimony. Moreover, the record shows that trial counsel objected to qualifying this witness as an expert. After the trial court overruled the objection, trial counsel cross-examined the expert on her experience. *See Harrington v. Richter*, 562 U.S. 86, 111 (2011) ("In many instances cross-examination will be sufficient to expose defects in an expert's presentation.").

¶ 45     To the extent Aurelio argues that trial counsel provided ineffective assistance because the expert's generalized testimony was "clearly inadmissible" as character evidence, we disagree. The supreme court has made clear that an expert's generalized testimony — that is, testimony that educates the jury about general concepts without discussing the particular facts of the case — is admissible if it has a sufficient logical connection to the factual issues to help the jury while still clearing CRE 403's admissibility

bar. *People v. Cooper*, 2021 CO 69, ¶¶ 1-3.[4]  Contrary to Aurelio's argument, the prosecution's generalized expert confined her testimony to general concepts about domestic violence and didn't offer any opinion about Aurelio's character or the facts of Aurelio's case.

### 4.    Motion for a New Trial

¶ 46    Aurelio contends that trial counsel provided ineffective assistance by failing to raise several arguments in his motion for a new trial.  He asserts that trial counsel should have argued that (1) the trial court erroneously admitted evidence that should have been excluded under CRE 404(b); (2) the victim and J.R. testified falsely, including J.R.'s false testimony about moving out of Colorado; and (3) the prosecution violated Crim. P. 16 and committed unspecified misconduct related to the false testimony.

¶ 47    But Aurelio doesn't develop any of these arguments, cite any supporting authority, or explain why the trial court would have granted a new trial had trial counsel advanced these arguments.

---

[4] The supreme court's *Cooper* decision reversed *People v. Cooper*, 2019 COA 21, which Aurelio relied on extensively in his supplemental Crim. P. 35(c) petition.

We therefore decline to address these conclusory contentions. *See People v. Romero*, 2015 COA 7, ¶ 53 (declining to address a Crim. P. 35(c) argument that the defendant presented in a perfunctory and conclusory manner).

### D. Cumulative Error

¶ 48 Aurelio contends that even if no single allegation of ineffective assistance of counsel warrants relief, the cumulative effect of counsel's errors denied him due process.

¶ 49 To warrant reversal under the cumulative error doctrine, a reviewing court must identify multiple errors that collectively prejudiced the defendant's substantial rights, even if no single error warrants reversal. *Howard-Walker v. People*, 2019 CO 69, ¶ 25. But even if we assume that the cumulative error doctrine applies to ineffective assistance of counsel claims — an issue we don't reach — we haven't identified any errors in the postconviction court's analysis of Aurelio's claims. Thus, a cumulative error analysis isn't required. *See People v. Villa*, 240 P.3d 343, 359 (Colo. App. 2009).

## IV.    Prosecutorial Misconduct

¶ 50    Aurelio contends the prosecution committed misconduct by (1) concealing J.R.'s criminal history, thus violating Crim. P. 16 and *Brady v. Maryland*, 373 U.S. 83 (1963); (2) concealing and then introducing inadmissible CRE 404(b) evidence related to one of his past cases; and (3) knowingly presenting false testimony through the victim and J.R.

¶ 51    The postconviction court determined that Aurelio could have raised these contentions previously, rendering them successive under Crim. P. 35(c)(3)(VII).  The court also determined that Aurelio identified no evidence in support of these contentions that couldn't have been discovered earlier through the exercise of due diligence, so the exception to the successiveness bar in Crim. P. 35(c)(3)(VII)(b) didn't apply.

¶ 52    As to J.R.'s criminal convictions, Aurelio argues that he exercised due diligence by requesting discovery from the prosecution on multiple occasions.  But even if true, the record reflects that Aurelio eventually received J.R.'s criminal history during the postconviction phase by checking with the Colorado Bureau of Investigation and obtaining court records.  Aurelio

doesn't explain why these same avenues wouldn't have revealed J.R.'s criminal history before and during trial had he and his counsel exercised due diligence. *See Mason v. People*, 25 P.3d 764, 767 (Colo. 2001).

¶ 53    We also reject Aurelio's other two contentions of prosecutorial misconduct. Even construing his pro se briefing broadly, Aurelio doesn't develop his argument that the postconviction court erred by rejecting these contentions as successive. *See Romero*, ¶ 53. If anything, Aurelio's allegations of false testimony are similar to his direct appeal arguments that the *Aurelio I* division already rejected. *See Aurelio I*, slip op. at ¶¶ 65-67; *accord Dunlap*, 173 P.3d at 1093.

## V.    Withdrawal of Postconviction Counsel

¶ 54    Aurelio contends that the postconviction court erred by allowing his postconviction counsel to withdraw but denying his request for substitute counsel before the evidentiary hearing on his claim that trial counsel provided ineffective assistance during plea negotiations. The People argue that any error was harmless because Aurelio presented competent arguments and evidence under the circumstances but couldn't have proved his claim even with the benefit of substitute counsel. We agree with the People.

23

## A.   Additional Background

¶ 55    In his pro se and supplemental postconviction petitions, Aurelio claimed that trial counsel improperly dissuaded him from accepting an eleven-year plea offer and overemphasized the strength of his defense.  The postconviction court granted Aurelio an evidentiary hearing to develop the facts underlying this claim.

¶ 56    Before the hearing, however, Aurelio's appointed postconviction counsel requested to withdraw because the attorney-client relationship had "broken down to the point that it [wa]s irreconcilable."  Aurelio agreed.  The court allowed postconviction counsel to withdraw but didn't appoint new counsel as Aurelio had requested.

¶ 57    The court explained that the evidentiary hearing would be limited to two factual questions: (1) "whether or not the plea agreement . . . of [eleven] years [in] DOC was forwarded to [Aurelio] by [trial counsel]" and (2) "whether or not [trial counsel] told [Aurelio] not to take a deal . . . [and] that there was no way [Aurelio] would lose at trial."  The court said it would allow Aurelio to present testimony from a defense investigator who allegedly overheard trial

counsel say to Aurelio, "Do not take a deal." But the court emphasized that the hearing wouldn't "deal with expert issues."

¶ 58 At the evidentiary hearing, Aurelio elicited testimony from the defense investigator that the prosecution extended a favorable "nonsex" plea offer in May 2015, under which Aurelio would plead guilty to second degree burglary and menacing. Aurelio himself testified that the offer contemplated an eleven-year prison sentence. According to the investigator, trial counsel said that he planned to recommend that Aurelio reject the offer "because we can win at trial."

¶ 59 Other evidence established, however, that trial counsel advised Aurelio to *accept* the plea offer, but Aurelio refused. In a May 2015 letter signed by both trial counsel and Aurelio, for example, trial counsel had explained the prosecution's eleven-year plea deal to Aurelio in detail and recommended that he accept the offer. But trial counsel testified that Aurelio "was never interested in [the plea] deals that [the prosecution] extended to him" and would only accept a sentence in "the single digits." Aurelio's letters to trial counsel confirmed this. As one example, Aurelio wrote to trial counsel in

May 2015 that "[eleven] years is still to[o] much time and I believe we have a good case for trial."

¶ 60　　In addition, trial counsel testified, contrary to Aurelio's evidence, that he would never advise a client that winning at trial was a "sure thing." He also explained that he verbally discussed the specifics of the prosecution's various plea offers with Aurelio — both a September 2014 offer that contemplated a fourteen-year sentence and the May 2015 offer that contemplated an eleven-year sentence. Trial counsel testified that, in both instances, he advised Aurelio to accept the offer.

¶ 61　　After the hearing, the postconviction court denied Aurelio's claim that trial counsel provided ineffective assistance, concluding that counsel's representation during plea negotiations didn't fall outside the "range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

### B. Applicable Law and Standard of Review

¶ 62　　A criminal defendant has a constitutional right to the effective assistance of counsel in their defense. *People v. Rainey*, 2023 CO 14, ¶ 1. But this constitutional right doesn't apply during the postconviction phase. *Townsell v. People*, 2026 CO 11M, ¶ 19.

26

Instead, a criminal defendant in Colorado has a limited statutory right to counsel in postconviction proceedings for "meritorious Crim. P. 35(c) motions." *Id.* (quoting *Silva v. People*, 156 P.3d 1164, 1168 (Colo. 2007)).

¶ 63 An error affecting only statutory rights requires us to consider the error's impact on the proceeding. *See People v. Cardenas*, 2015 COA 94M, ¶ 18 ("Harmless error analysis generally applies to violations of statutory rights."); *see also* Crim. P. 52(a) (When reviewing for harmless error, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."). Because Aurelio preserved this contention through his request for substitute counsel, we review for nonconstitutional harmless error. *Hagos*, ¶ 12. Under this standard, we will reverse only if the error substantially influenced the hearing's outcome or affected the fairness of the proceeding. *Id.*

## C. Analysis

¶ 64 Even if we assume that the postconviction court erred by denying Aurelio's request for substitute postconviction counsel, we conclude the error was harmless under the circumstances.

¶ 65     Trial counsel's testimony and the documentary evidence admitted at the postconviction hearing firmly established that trial counsel communicated the prosecution's plea offers to Aurelio and recommended that he accept them.  Although Aurelio competently presented contrary evidence through multiple witnesses, including the defense investigator, the court found trial counsel's testimony and the documentary evidence more credible.  Aurelio also cross-examined trial counsel on his alleged financial motives for extending the trial process — evidence the court didn't credit.  *See People v. Williams*, 908 P.2d 1157, 1161 (Colo. App. 1995) (the weight and credibility given to a witness's testimony in a Crim. P. 35(c) hearing are within the province of the postconviction court).

¶ 66     Aurelio nonetheless argues that he suffered prejudice because his expert witness declined to testify after postconviction counsel withdrew, allegedly informing Aurelio that he didn't work with pro se litigants.  But the court specifically limited the postconviction hearing to two narrow factual disputes and said the hearing wouldn't involve "expert issues."  Given this limitation, we fail to see how the expert's testimony could have influenced the hearing's

28

outcome. And aside from the expert's testimony that the court deemed irrelevant, Aurelio doesn't identify any other evidence or testimony that substitute counsel would have elicited that he wasn't able to marshal competently.

¶ 67 Accordingly, even if the court erred by denying Aurelio's request for substitute postconviction counsel, we can't say that the error substantially influenced the hearing's outcome or affected the fairness of the proceeding.

## VI. Evidentiary Hearing

¶ 68 Aurelio contends that the postconviction court erred by rejecting his claim, after the evidentiary hearing, that trial counsel provided ineffective assistance of counsel in plea negotiations. Specifically, he argues that the court improperly prevented him from calling four witnesses — one of his prior attorneys, a defense investigator, an expert, and trial counsel's civil attorney in a related malpractice case. Aurelio also challenges the court's factual findings and credibility determinations. We perceive no error.

### A. Applicable Law and Standard of Review

¶ 69 The constitutional right to effective assistance of counsel extends to the plea bargaining process. *Lafler v. Cooper*, 566 U.S.

156, 162 (2012). To establish deficient performance in the plea bargaining process, a defendant must show that counsel's advice deprived him of the opportunity to make a reasonably informed decision about whether to accept or reject a plea offer. *Delgado*, ¶ 17.

¶ 70 When a postconviction court denies a motion for postconviction relief after conducting a hearing, we review its legal conclusions de novo but defer to its factual findings if the record supports them. *Dunlap*, 173 P.3d at 1063. If the evidence in the record supports the postconviction court's findings and holdings, we won't disturb the judgment on review. *People v. Wardell*, 2020 COA 47, ¶ 27. We review a postconviction court's evidentiary rulings for an abuse of discretion. *See People v. Quillen*, 2023 COA 22M, ¶ 14.

### B. Analysis

¶ 71 We conclude that the evidence elicited at the evidentiary hearing, summarized *supra* Part V.A, amply supports the postconviction court's findings that trial counsel provided effective assistance of counsel during plea negotiations. While Aurelio takes issue with the court's credibility findings and its rejection of his

evidence, the weight and credibility given to witness testimony fell within the postconviction court's exclusive province. *See Williams*, 908 P.2d at 1161.

¶ 72 We aren't persuaded otherwise by Aurelio's argument that the postconviction court improperly excluded four of his witnesses. As discussed, the postconviction court limited the evidentiary hearing to factual questions involving trial counsel's communications with Aurelio about the prosecution's eleven-year plea offer. Aurelio doesn't explain what relevant testimony the excluded witnesses would have provided on these limited factual questions. Indeed, three of the witnesses' affidavits that appear in the record suggest they had no knowledge of trial counsel's communications with Aurelio regarding the eleven-year plea offer. And the fourth witness, trial counsel's private civil attorney, had no involvement other than providing Aurelio with trial counsel's case file in 2018 — three years after the plea negotiations. As a result, we perceive no abuse of discretion in the court's decision excluding these witnesses from testifying at the postconviction hearing.

¶ 73    For these reasons, the postconviction court didn't err by rejecting Aurelio's claim that trial counsel provided ineffective assistance of counsel in plea negotiations.

## VII.  Disposition

¶ 74    We affirm the order.

JUDGE FOX and JUDGE KUHN concur.